IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
—BROWNSVILLE DIVISION—

United States District Court
Southern District of Texas
ENTERED

MAR 1 6 2009

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| ALEJANDRO VASQUEZ HERRERA, INDIVIDUALLY, AND ON BEHALF OF A.V., JR., A MINOR, A.G.V., A MINOR, P.V., A MINOR, B.V., A MINOR, AND AS HEIR TO MARIA VAZQUEZ, DECEASED *Plaintiffs,* | § § § § § § § § | |
| VS. | § § | CIVIL NO. B-07-114 |
| MICHELIN NORTH AMERICA, INC. AND MICHELIN AMERICAS RESEARCH & DEVELOPMENT CORPORATION *Defendants.* | § § § § § | |

## MEMORANDUM OPINION AND ORDER

Two motions are pending before the Court. The first is Defendants' Motion to Dismiss Under the Doctrine of Forum Non Conveniens (the "FNC Motion") in which they seek dismissal of this case, so that it may be re-filed in Mexico. In the event this case remains in this forum, Defendants also filed a Motion to Apply the Laws of Mexico to Plaintiffs' claims (the "COL Motion"). Having considered the motions, the record, and the relevant law, the Court finds that dismissal under the doctrine of forum non conveniens is unwarranted. Accordingly, the Court denies Defendants' FNC Motion, and denies the COL Motion without prejudice so that the judge who presides over the trial may make that ultimate decision.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs in this action are Alejandro Herrera ("Mr. Herrera") and four of his six children who survived a car crash that occurred in the State of Veracruz, Mexico on August 14, 2006. According to the Original Complaint, the vehicle, a 1987 Toyota truck, was equipped with at least

one BF Goodrich Radial All Terrain TA Baja Champion 31 x 10.5/R15 109 tire designed and manufactured by Defendants Michelin North America, Inc. and Michelin Americas Research and Development Corporation (collectively, "Michelin").[1] The tire allegedly suddenly failed, causing the vehicle to roll over on dry, flat pavement, killing Maria Vazquez ("Mrs. Herrera") and her unborn child, and injuring several others.[2]

Plaintiffs sued Michelin alleging causes of action for strict liability (including claims for design defects, manufacturing defects, and marketing defects), breach of express and implied warranties, and negligence. Plaintiffs seek relief in the form of general and exemplary damages and pre and post-judgment interest. All of the Plaintiffs (the "Herrera family") currently reside in Lombard, Illinois, a suburb of Chicago, as they did at the time of the accident and the filing of this lawsuit. *See* Defs'. Mot., Ex. A, *passim*. Mr. Herrera is a dual citizen of the United States and Mexico. *See id.* at 9. At the time of the accident, Mrs. Herrera was a lawful permanent resident of the United States and lived with Mr. Herrera and their children in Lombard, Illinois. *See id.* at 19. Three of the four minor plaintiffs, A.V., Jr., B.V., and P.V., were born in the United States, and thus

---

[1] On January 1, 2008, Michelin Americas Research and Development Corporation merged with and became a division of Michelin North America, Inc.

[2] At the time of the accident, the following ten people were passengers in the Toyota truck (some in the cab and others in the rear bed): Alejandro Vazquez Herrera, Maria Vazquez Herrera, A.V. (a minor), A.G.V. (a minor), P.V. (a minor), B.V. (a minor), R.V. (a minor), Rosa Herrera Hernandez, Ivana Vazquez, and Stephanie Vazquez. Maria Vazquez Herrera and her unborn child died as a result of the accident.

Alejandro and Maria Herrera were married at the time of the accident. The minor plaintiffs in this suit are their children. Mr. Herrera has two other children from a previous relationship who are not party to this suit, but who were involved in the accident. *See* Defs.' Mot., Ex. A at 12. Rosa Hernandez is Mr. Herrera's mother. Ivana and Stephanie Vazquez are Mr. Herrera's nieces; Ivana from his sister, and Stephanie from his brother.

There is some discrepancy in the pleadings as to whether Plaintiff A.V., Jr. was directly involved in the accident. The Original Complaint states that he seeks damages under a theory of bystander recovery because he was present at the scene of the accident, but during Mr. Herrera's deposition, taken on March 5, 2008, Mr. Herrera does not name A.V., Jr. as a passenger in the vehicle at the time of the accident. *Compare* Pls.' Orig. Compl. at ¶ 13.1 *with* Defs.' Mot., Ex. B at 43-47 (hereinafter "Mr. Herrera's Dep. at __"). The Court notes this discrepancy only for clarity's sake; it had little to no impact on the Court's ruling in this Order.

are United States citizens. *See id.* at 12. A.G.V. was born in Mexico, and was a Mexican citizen at the time of the crash. *See id.* at 28. While his status in the United States is not evident from the contents of the Court's file, he resided with his family in Lombard, Illinois at all pertinent times. *See id.*

Plaintiffs' filed their Original Complaint on August 3, 2007 (DE 1). The parties had been proceeding with discovery for approximately ten months when Michelin filed its FNC Motion on June 5, 2008, arguing Mexico was a more convenient forum for this case (DE 20). Plaintiffs filed a Response to Defendants' FNC Motion on June 25, 2008, contending that this case should remain in the Southern District of Texas (DE 21). On July 3, 2008, Defendants filed their COL Motion (DE 22), and shortly thereafter, a Reply to Plaintiffs' Response to its FNC Motion on July 7, 2008 (DE 24). Plaintiffs' filed a Response to Defendants' COL Motion on July 14, 2008 (DE 26). Defendants' Reply to that response followed on July 24, 2008 (DE 28). In addition, this Court held a hearing on the FNC Motion on November 6, 2008 (the "FNC Hearing").[3] Therefore, both the forum non conveniens and choice of law issues are ripe for the Court's ruling.

## II.    FORUM NON CONVENIENS ANALYSIS

The essence of the forum non conveniens doctrine is that it permits a court to decline jurisdiction and dismiss a case, even when properly before the court, if the case could more conveniently be tried in another forum. *See In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008). A heavy burden is traditionally imposed upon defendants by the forum non conveniens doctrine, and dismissal is permitted "only in favor of a substantially more convenient alternative." *Id.* at 314 (comparing burden imposed in forum non conveniens setting to that of transferring venue

---

[3] References to this hearing will hereinafter be cited to as "FNC Hrg. Tr. at __."

under 28 U.S.C. § 1404).

The forum non conveniens analysis consists of four inquiries. First, this Court must assess whether an alternative forum is available. *See Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002). An alternative forum is available if "the entire case and all parties can come within the jurisdiction of that forum." *Id.* (quoting *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1165 (5th Cir. 1987) (en banc)). Second, this Court must decide if the alternative forum is adequate. *See id.* An alternative forum is adequate if "the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Id.* (quoting *In re Air Crash*, 821 F.2d at 1165 (internal citation omitted)). If an alternative forum is both available and adequate, the Court will then balance a host of private interest factors in order to determine whether dismissal is warranted. *See Morales v. Ford Motor Co.*, 313 F. Supp. 2d 672, 673-74 (S.D. Tex. 2004). If the private factors do not weigh in favor of dismissal, the Court will consider certain public interest factors. *See id.* at 674.

## A.   AVAILABILITY AND ADEQUACY

Supreme Court and Fifth Circuit case law have made it clear that a foreign forum is available to plaintiffs haling from the forum's country if the defendant submits itself to that foreign jurisdiction. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981); *see also Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983). Knowing this, Michelin has agreed to "make itself available to the courts of Mexico." Defs. FNC Mot. at 5. Were plaintiffs haling from Mexico, that would end the availability matter. In this case, however, the lone adult Plaintiff is a dual citizen of Mexico and the United States and a long-term permanent resident of Illinois. *See* Defs.' FNC Mot., Ex. A at 9. Additionally, three of the four minor plaintiffs are United States

citizens with no apparent legal status in Mexico, and are also permanent residents of Illinois. *See id., passim.* Hence, this is not the typical forum non conveniens situation of foreign plaintiffs haling from a foreign forum. *See Veba-Chemie*, 711 F.2d at 1245. For that reason, one question the Court has with respect to the availability of Mexico as an alternative forum is: if this case were dismissed and sent to Mexico, would the three minor United States citizen and Illinois resident plaintiffs be denied access to the Mexican courts, even if their father, who has dual citizenship, is permitted to file suit in Mexico? Neither Defendants nor Plaintiffs addressed this issue. "[D]efendants bear the burden of proof on all elements of the forum non conveniens analysis." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007). Defendants have not provided the Court with the relevant Mexican law principles, and thus, the record does not indicate whether Mexican law permits parents with legal status, like Mr. Herrera, to sue on behalf of minor children with United States citizenship only. Therefore, the Court is unable to state with certainty that "the entire case and *all* the parties can come within [Mexico's] jurisdiction." *In re Air Crash*, 821 F.2d at 1165 (emphasis added). Nevertheless, this Court will assume Mexico is an available forum, and will proceed with the forum non conveniens analysis as if Defendants had met their burden on this requirement.

The Court follows this course despite the fact that Plaintiffs argue that Mexico is an inadequate alternative forum because numerous Fifth Circuit cases have held that "Mexico is an adequate alternative forum for tort litigation involving American-made products, despite differences in Mexican and American substantive and procedural law." *Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646, 659 (S.D. Tex. 2003); *see also Gonzalez*, 301 F.3d at 377 (affirming dismissal of suit against American auto manufacturer on the basis of forum non conveniens in case arising

from auto accident in Mexico); *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671-72 (5th Cir. 2003) (stating "[t]he fact that Mexico provides a wrongful death cause of action, albeit with severe damage caps, makes the country an adequate forum"); *cf. In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 707 (7th Cir. 2005).

## B.   PRIVATE FACTORS

Having determined that Mexico is an adequate forum in this case, and having assumed it is available, the Court will now examine the private interest factors, which include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) the possibility of view of premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *See Vasquez*, 325 F.3d at 672. If the private factors weigh in favor of dismissal, a court need not proceed to the public factor analysis. *See Morales*, 313 F. Supp. 2d at 674.

### 1.   Sources of proof

Defendants conclusively established the following facts relating to sources of proof: (1) the truck was purchased in Illinois in 2002, transported to Mexico later the same year, and kept there until the time of the accident; (2) the accident occurred in Mexico; (3) was investigated by Mexican authorities; and (4) the accident victims were treated in Mexican medical facilities. *See* Defs.' FNC Mot. at 7; *see also* Mr. Herrera's Dep., *passim*. Defendants argue that since "a United States court cannot compel the production of documents or persons not in either party's control. . . .sources of proof will be easier if this case is tried in Mexico, where the accident occurred and all of the accident-specific witnesses reside." Defs.' FNC Mot. at 8. At the FNC Hearing, Defendants added

that some witnesses and medical records from the victims' treating hospital in Veracruz might be necessary for trial. *See* FNC Hrg. Tr. at 8-9. Plaintiffs counter that "[t]he vast majority of relevant evidence is located in the United States, and is written in English[;] it is much easier to translate one accident report as opposed to thousands of [ ] documents [ ] produced by Defendant relating to the design and manufacture of the accident tire[;] all of Defendants' corporate representatives and witnesses reside in the United States and speak English[; and] there are no issues about other witnesses or drivers because this was a single vehicle incident and no eye witnesses have been identified." Pls.' FNC Resp. at 4-5. Given these considerations, Plaintiffs argue that since each side will retain an accident reconstruction expert, the testimony of the investigating personnel is certainly not necessary to either side's case. *See id.* at 5. Despite this contention, it is clear that any documentary evidence regarding the accident itself and the resulting medical care is clearly in Mexico.

The documentary sources of proof in this case are clearly split between the United States and Mexico, the accident-specific evidence in Mexico being the less voluminous. The Fifth Circuit has ruled that identifying the situs of the wrongful conduct at an American designer's drawing board is not enough to overcome dismissal for inconvenient forum where the production, sale, and alleged failure of the product all occurred in Mexico. *See Gonzalez*, 325 F.3d at 674. In this case, however, the tire was not only designed in the United States, it also was manufactured in Alabama. Plaintiffs claim it was purchased in the United States along with the Toyota truck, and Defendants, while expressing doubt regarding this fact, have not offered any proof otherwise. Unlike in *Gonzalez*, only the alleged failure of the tire in this case is certain to have occurred in Mexico. Accordingly, the Court finds that the documentary contacts, which split between Mexico and the United States, do

not weigh in favor of dismissal.

### 2.    Witnesses

The location of witnesses, especially those beyond the subpoena power of this Court, is an important factor.  Initially, the Court notes that in this case, there is no venue, in Mexico or the United States, that has *absolute* subpoena power over all of the non-party witnesses to this action. *Cf. In re Volkswagen*, 545 F.3d at 316 (transferring venue to another division that did enjoy absolute subpoena power over both depositions and the trial); *see also* F.R.CIV.P. 45(c)(3).  Hence, with respect to the location of witnesses to this action, this Court necessarily balances the convenience of two less-than-ideal forums.  Bearing that in mind, Defendants have established that the following witnesses are in Mexico: (1) some of the passengers involved in the accident; (2) the official who investigated the accident; (3) the medical professionals who treated the Plaintiffs after the accident; and (4) the members of Mr. Herrera's family who helped maintain the truck during the time it was kept in Mexico.  The remaining witnesses, including Plaintiffs and all of the witnesses from Michelin are in the United States.  A court's focus should not rest on the number of witnesses in each locale; rather, it should consider "the materiality [ ] of the [ ] witnesses' testimony and then determine their accessibility and convenience to the forum." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1146 (9th Cir. 2001).  At the FNC hearing, counsel for Michelin stated:

> . . . **one of the most central issues about a tire case, is how the tires were maintained.**  Quite frankly, that's typically the way – what a tire manufacturer will point to, and what a lot of the evidence is about is whether or not the tire was mistreated during its life. And so **the people who maintained the truck,** who used it and owned it for the four years, almost four years it was down in Mexico **are going to be pretty crucial.**

FNC Hrg. Tr. at 15 (emphasis added).  Thus, according to Michelin's own testimony, the people who

maintained the truck, and not the investigator or the treating medical personnel, are the key witnesses outside the United States who may provide material testimony for the defense. *See Lueck*, 236 F.3d at 1146.  The people who maintained the truck and its tires were the Herrera's when they visited Mexico and Mr. Herrera's relatives. *See* Mr. Herrera's Dep. at 22-24.  Plaintiffs represented to this Court that those family members living in Mexico are willing to testify, if necessary, in the United States, and that they would also make these "crucial" people available to Defendants for deposition when counsel for each side visits the accident scene in Veracruz before trial. *See* FNC Hrg. Tr. at 5.  The Court is mindful that these kinds of declarations do not actually commit the persons in question to appear at trial. *See Morales*, 313 F. Supp. 2d at 681.  Nevertheless, the fact that some witnesses with material information regarding the subject tire's maintenance are in Mexico is not enough to overcome the convenience derived from the fact that most of the witnesses key to the Plaintiffs' product liability claims, including the Plaintiffs and the Defendants themselves, are in the United States. *See In re Volkswagen*, 545 F.3d at 314 ("forum non conveniens dismissal permitted only in favor of a substantially more convenient alternative . . .").  This private factor, therefore, weighs in favor of keeping the case in the United States.  At a minimum, it does not weigh in favor of either side.

### 3.    Possibility of View of Premises

Defendants claim "a view of the premises will be more readily available to a Mexican court," Defs.' FNC Mot. at 7, and that "a Texas jury will be unfamiliar with the road conditions at issue." Defs.' FNC Reply. at 6.  Plaintiffs contend that judge and jury "can be educated about the accident scene by photographs, Plaintiffs' testimony, and expert testimony, animations, etc.[, and that t]he facts of the roadway and its characteristics . . . can be measured, analyzed, and recreated [ ] by

experts[,]" diminishing the need for the jury to view the premises. Pls.' FNC Resp. at 6.  In *Morales*, a vehicle-rollover case alleging design defects in the 2001 Ford Explorer, this Court stated that it is more common for juries to personally view accident scenes located abroad because of their unfamiliarity with road conditions.  *See Morales*, 313 F. Supp. 2d at 679-680.  Given the current availability of cheap, obtainable, and sophisticated cameras, video equipment, and animation software, this factor is taking less and less importance as either side can present the jury with a clear idea of the road and its condition. *See Snaza v. Howard Johnson Franchise Sys., Inc.*, No. 3:07-CV-0495-O, 2008 WL 5383155, at *13 (N.D. Tex. Dec. 24, 2008) (refusing to dismiss wrongful death action to Mexico on grounds of inconvenient forum, stating that "it is not clear in these days of advanced technology why a physical viewing of the hotel balcony [from which decedent fatally fell] would be necessary").

### 4.    Practical Problems

The Court has not been presented with any insurmountable practical problem, the elimination of which would make trial of this case easier, more expeditious, and less expensive.  Of course, a decision by Plaintiffs to file this case in their home forum, the Northern District of Illinois, might have had less practical problems.  Michelin also conducts substantial business activity there, eliminating any concern over personal jurisdiction.  At the FNC hearing, however, Defendants represented they did not object to the case remaining here in the event the Court denies dismissal pursuant to its FNC Motion. *See* FNC Hrg. Tr. at 7.  Hence, this factor does not weigh in favor of dismissal.

### C.    PUBLIC FACTORS

Due to the fact that the private interest factors do not weigh decisively in favor of dismissal,

the Court will consider the public interest factors. Those factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *See Vasquez*, 325 F.3d at 673.

As to court congestion, Defendants claim Plaintiffs in this case are among "hundreds of foreign plaintiffs" that have sought "a free license to vastly increase the value of their claims by the simple maneuver of filing them in United States courts." Defs.' Mot. at 10. Defendants arguments are misplaced. There are no foreign Plaintiffs in this suit, except for one minor Plaintiff, who has resided in Illinois, both before and after the accident in question. As has been repeated above, Mr. Herrera is a United States citizen, and three of the other four minor plaintiffs are also United States citizens. The decedent, Mrs. Herrera, was a lawful permanent resident of the United States. Moreover, this Court's civil docket is manageable and poses no obstacle that the parties would not face in a sister court. Thus, concerns about docket congestion do not weigh in favor of dismissal.

As to having localized controversies decided at home, the Court finds this public factor clearly counsels toward dismissal from Texas. Even if this suit were "localized" in nature, a position this Court does not take, it certainly is not localized in Texas. None of the parties in this suit are Texas residents or citizens, and no other specific connection to Texas exists aside from being Plaintiffs' forum choice. While Michelin conducts substantial business activity in the Southern District of Texas, that is true for practically every judicial district in the United States, and thus, does not provide a point of differentiation for Plaintiffs' forum choice. Indeed, Plaintiffs' counsel

conceded at the FNC hearing that it chose the Brownsville Division of the Southern District of Texas as its forum because it was the closest forum to the Mexican witnesses without being in Mexico. *See* FNC Hrg. Tr. at 6-7.  That is not enough to justify Texas as a convenient forum.[4]

The third and fourth public interest factors concern choice of law, and are: the interest in having a forum that is at home with the law that must govern the dispute, and the avoidance of unnecessary choice of law problems.  For the reasons elaborated below, this Court suggests that a court could find that Mexican law does not govern this dispute, and thus, neither of these factors weigh in favor of dismissal.  Before addressing the choice of law issue, the Court notes the final public interest factor, the unfairness of burdening citizens in an unrelated forum with jury duty, weighs against Texas serving as the forum for this case.  There are no Texas parties to this action or Texas-specific contacts to this litigation, other than being Plaintiff's forum choice and a place where the subject tire is presumably for sale. *See In re Volkswagen*, 545 F.3d at 318 (rejecting the mere fact that a product is available in a particular judicial division as a ground for finding that jury duty would not be a burden).  Since there are no Mexican parties to this litigation, except the one minor Mexican plaintiff and perhaps Mr. Herrera who has dual citizenship, this factor does not necessarily weigh in favor of dismissal to Mexico.

## III.   CHOICE OF LAW

Initially, the Court notes that the specific circumstances of this suit do not permit it to totally avoid "unnecessary choice of law problems" since Texas law would almost certainly not control.

---

[4] While the fact that both parties compromise and agree on a venue may make sense and facilitate a more streamlined process, it is not without its pitfalls, especially to the orderly administration of justice.  It could easily lead to forum shopping and/or judge shopping.  The law contemplates a certain level of strategy being used when a plaintiff picks a forum and when a defendant weighs a decision to file a motion to dismiss or transfer.  Nevertheless, the Court must weigh factors beyond those which concern the individual parties.

The fourth public interest factor, therefore, does not counsel towards dismissal.  Further, in order to determine whether the third public interest factor in the forum non conveniens analysis weighs in favor of dismissal, this Court must at least review what body of law governs this dispute.  A federal district court applies the choice of law rules of the forum state.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941).  Texas, the forum state here, follows the "most significant relationship" approach of the Restatement (Second) of Conflicts of Law (1971).  *See Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979).  Under this test, the Court considers the following contacts: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered.  *See id.*; *see also* RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 145 (1971).  It is not sufficient merely to tally the § 145 contacts and choose the state with the greatest number.  *See Duncan v. Cessna Aircraft Co.*, 664 S.W.2d 414, 421 (Tex. 1984); *see also Gutierrez*, 583 S.W.2d at 319.  The resolution of choice of law questions turns on the qualitative nature of those contacts as affected by the policy factors enumerated in § 6.  *See id.*  The policy considerations a court weighs under § 6 include:

  (a) the needs of the interstate and international systems,
  (b) the relevant policies of the forum,
  (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
  (d) the protection of justified expectations,
  (e) the basic policies underlying the particular field of law
  (f) certainty, predictability, and uniformity of result, and
  (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 6 (1971); *see also Gutierrez*, 583 S.W.2d at 318-319.  Factor (d), protecting the justified expectations of the parties, is of lesser importance to this case as it has more bearing on contract disputes.  *See* RESTATEMENT (SECOND) OF CONFLICTS OF

LAWS § 145 cmt. b (1971).

Initially, the Court identifies the conflict of law which would necessitate the trial court to decide a choice of law issue. *See Ford Motor Co. v. Aguiniga*, 9 S.W.3d 252, 260 (Tex. App.– San Antonio, 1999). In this case, Michelin asserts that Mexican law should apply because Mexico has an interest in regulating the conduct of manufacturers whose products traverse its highways, and that application of Texas law to this dispute would violate due process norms of fairness. *See* Defs.' FNC Mot. At 11; *see also* Defs.' COL Mot. at 8-9. Plaintiffs argue that Texas law should apply to this case because Michelin does business in Texas, Texas is the forum, the Texas Legislature and courts have a particular interest in regulating conduct of manufacturers that do business in Texas, and finally because the Supreme Court of Texas has recognized "the very substantial interests of the forum state in applying its own laws." Pls.' COL Resp. at 10. Thus, the choice of law presented by the parties to this Court is between Mexican and Texas law. The Court, however, finds Illinois also has a significant connection to this litigation, being Plaintiff's home forum and the place where the truck and presumably the subject tire were purchased. The Court therefore considers Illinois' contacts to this dispute, along with Mexico's and Texas's, in evaluating the governmental interests at stake. *See Aguiniga*, 9 S.W.3d at 260 (citing *Duncan*, 665 S.W.2d at 421).

Contacts with Mexico in this case include the following: (1) the accident occurred in Mexico; Mr. Herrera is a dual citizen of the United States and Mexico, and took his family to Veracruz once or twice a year to visit his mother and other extended family; (2) Mrs. Herrera, killed in the accident along with her unborn child, was a Mexican national (but also a legal permanent resident of the United States and permanent resident of Illinois since); (3) at least one other non-plaintiff injured passenger was a Mexican national; (4) one of the minor plaintiffs is a Mexican national (but also a

-14-

permanent resident of Illinois); (5) the 1987 Toyota truck involved in the accident was registered in Mexico to a Mexican resident (Mr. Herrera's nephew), who helped maintain the truck from December 2002 when it was brought to Mexico until August 2006 when the accident occurred; the accident was investigated by Mexican officials; and (6) the injured passengers and driver were treated at a Mexican hospital.

Texas has only two contacts with this case.  First, it is Plaintiffs' chosen forum for this litigation, but that choice is given less deference here since Plaintiff did not file in their home forum. *See Piper Aircraft Co.*, 454 U.S. at 255 (presumption in favor of plaintiff's chosen forum applies with less force when the plaintiff or real parties in interest are foreign).  The second contact is that Michelin conducts substantial business activity in Texas and "[t]he Texas legislature and courts have developed an almost paternalistic interest in . . . the regulation of the conduct of manufacturers that have business operations in the state." *Mitchell*, 913 F.2d at 250.

Contacts with Illinois in this case include: (1) it is the domicil and residence of all Plaintiffs, adult, minor, and the deceased; (2) it is the place where the 1987 Toyota truck was purchased in 2002; (3) it is the place in which Plaintiffs allege the subject tire in this case was purchased along with the truck; and (4) Michelin also conducts substantial business activity in Illinois.

In matters of a tort or personal injury, the situs of the injury determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship. *See* RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 146 (1971).  Given that the Second Restatement does not make the place of injury dispositive, and that the *lex locus delicti* rule was specifically overruled by the Supreme Court of Texas in *Gutierrez*, this Court also does not consider the place of the injury dispositive of the present choice of law issue. *See Aguiniga*,

9 S.W.3d at 260; *see also Gutierrez*, 583 S.W.2d at 318.

Turning now to the governmental interests of the implicated jurisdictions, the Court finds that Texas and Illinois share a similar interest in regulating the conduct of manufacturers who place defective products into their streams of commerce. *See Mitchell*, 913, F.2d at 250 ("[t]he Texas legislature and courts have developed an almost paternalistic interest in . . . the regulation of the conduct of manufacturers that have business operations in the state"); *see also Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1404 (7th Cir. 1994) (noting that in Illinois those who sell "unreasonably dangerous" products fall within reach of strict products liability); *Townsend v. Sears, Roebuck, & Co.*, 879 N.E.2d 893, 907 (Ill. 2007) (quoting an Illinois appellate court that found "Illinois has a strong interest in applying its products liability law to regulate culpable conduct occurring within its borders, induce the design of safer products, and deter future misconduct").

Mexico's interest, in contrast with those of Texas and Illinois, has been described by the Fifth Circuit as follows:

> [t]he Mexican government has resolved a trade-off among the competing objectives and costs of tort law, involving interests of victims, of consumers, of manufacturers, and of various other economic and cultural values. In resolving this trade-off, the Mexican people, through their duly-elected lawmakers, have decided to limit tort damages ['to create a hospitable climate for investment'].

*Vasquez*, 325 F.3d at 675 n.14. Mexico's interest may therefore lie first and foremost in shielding Mexican corporate defendants from excessive tort liability. Texas state courts opinions have echoed the Fifth Circuit's sentiments in this regard.

For example, in *Gutierrez*, a plaintiff sued for personal injuries suffered in a two-car accident that occurred in the State of Chihuahua, Mexico. *See Gutierrez*, 583 S.W.2d at 313. The plaintiff and defendant driver were both residents of El Paso, Texas. *See id.* The Supreme Court of Texas

-16-

eschewed *lex locus delecti* as the choice of law rule, adopted the "most significant relationship" test

for torts cases, and found that:

> [t]he only contact Mexico has with this case is the fact that accident occurred there.
> Further, it makes little sense to apply Mexico's measure of damages, which indexes
> the amount of recovery to the prevailing wages set by the labor law of that nation,
> when both Gutierrez and Collins are residents of Texas.

*Id.* at 319. The Court's language suggests that where no Mexican parties are involved, Mexican law

should not apply, even if the accident occurred there.

Also, in *Ford Motor Co. v. Aguiniga*, the plaintiff brought wrongful death and products

liability claims for a single-vehicle accident (caused by a faulty fuel pump relay) in Mexico that

killed Texas residents on vacation there. *See Aguiniga*, 9 S.W. 3d at 255-56. The surviving

passengers were treated in a Mexican hospital, and Mexican authorities investigated the crash. *See*

*id.* at 260. The subject Ford van was manufactured in Michigan and sold to the plaintiff in

Louisiana. *See id.* The *Aguiniga* court did not give great weight to the place of the injury because

that "rule of law reflects the old mechanical rules of *lex locus delecti* and *lex locus contractus*[; . .

. t]he former was rejected by the Texas Supreme Court in *Gutierrez*." *Id.* In finding Texas was the

only state with an interest, and rejecting Defendants' argument that Mexico has a strong interest in

the operation of motor vehicles on its highways, the Court explained that:

> [o]ur review of this case established that Mexico has no interest in this litigation.
> Ford is a United States corporation, not a Mexican corporation. Defendant Marta
> Velazquez was a Texas resident and a United States citizen. This fact establishes that
> neither defendant is a Mexican resident, citizen, nor business. Therefore, there is not
> a Mexican defendant who would be protected by the limitations in damages under
> Mexican law.

*Id.* As in *Aguiniga*, Plaintiffs in this case are United States citizens who were on vacation in Mexico

at the time of the accident; they were treated at a Mexican hospital and Mexican officials

-17-

investigated the crash; the vehicle was purchased in the United States; like Ford, Michelin is a United States corporation; and there are no Mexican defendants.  One point of distinction is that the Toyota truck used by Plaintiffs in this case was not "fortuitously" in Mexico, as could be said of the Ford van in *Aguiniga*.  Mr. Herrera and his brother took the Toyota truck to Mexico for their family's use and for personal use on their vacations.  Nevertheless, this Court concludes, like the *Aguiniga* court did, that Mexico has a lesser interest in the instant litigation because its governmental interests are not served where none of the plaintiffs are residents of Mexico, and there is no Mexican defendant that would benefit from its damages limitations.

That does not end the choice of law matter, however, because Mexico's lack of interest in this litigation cannot create one in Texas, where none otherwise exists.  Indeed, having reviewed relevant Supreme Court case law on the due process limitations on choice of law, the Court agrees with Defendants that application of Texas law to this case would be "an unconstitutional exercise of extraterritorial jurisdiction . . . ."  Defs.' COL Mot. at 9.  Specifically, the Court observes that in *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981), the Supreme Court held that "for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law, is neither arbitrary nor fundamentally unfair."  In that case, a decedent living in Wisconsin, but working in Minnesota, took out multiple insurance polices in Wisconsin and was killed in Wisconsin when the motorcycle on which he was riding was rear-ended by another vehicle.  *See id.* at 305-06.  After his death his widow moved to Minnesota for reasons unrelated to the litigation, and there sued, which courts applied the Minnesota "stacking rule" to the insurance policy (permitting the stacking of separate uninsured motorists policies) in conflict with Wisconsin law.  *See id.*  In

finding that the Minnesota court's application of Minnesota law to the widow's claims was not arbitrary or fundamentally unfair, the Supreme Court emphasized that Allstate was aware when it issued the policy to decedent that he traveled to Minnesota daily to work for a Minnesota corporation, and that Allstate conducted substantial business activity in Minnesota. *See id.* at 313-18.

Four years later, in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), the Supreme Court revisited the constitutional limitations on choice of law. In that case, a Kansas court applied Kansas contract and Kansas equity law to class action claims for interest on suspended royalties by leaseholders, notwithstanding that over 99% of gas leases and some 97% of the plaintiffs in the case had no apparent connection to Kansas except for the lawsuit. *See id.* at 799-803. The Kansas court refused to apply the laws of the states where the leases were located (mostly in Texas and Oklahoma) and found Phillips liable for interest on suspended royalties as a matter of Kansas law. *See id.* at 803. The Supreme Court held that while Kansas did have an interest in regulating Phillips' conduct in Kansas since Phillips owned property and conducted substantial business in the state, and oil and gas extraction was an important business to Kansas, and hundreds of Kansas plaintiffs were affected by Phillips suspension of the royalties (even though only a few leases in issue are located there), this was not enough for Kansas to have a "significant contact or significant aggregation of contacts" to the claims asserted by each member of the plaintiff class. *Id.* at 818-19.

In this case, the fact that Texas is Plaintiff's chosen forum and that the allegedly defective tire was sold by Michelin throughout the United States, presumably in Texas as well, does not create a "significant contact." Thus, it would be unfair to apply Texas law to this case. *See Hague*, 449 U.S. at 313. This conclusion is buttressed by the Supreme Court's decision in *Shutts*, which

-19-

specifically rejected as a basis for applying Kansas law in that suit the fact that Phillips conducted substantial business in Kansas. *See Shutts*, 472 U.S. at 821-22. In determining whether a substantial connection exists, a court must focus on whether a state has a connection to the *specific* transaction or event giving rise to the litigation, not whether the Defendant generally has ties to the state. *See id.* Michelin has general business ties in Texas; none specific to this litigation. Plaintiffs have no ties at all to Texas. Accordingly, Texas law should not control this dispute.

Given the minimal interest of Mexico and the total lack of interest of Texas in this litigation, and Illinois' interest in protecting its citizens from defective products sold there, this Court concludes that there is a chance that Illinois law governs the Plaintiffs' claims in this case, under the most significant relationship test as applied in Texas.[5] Accordingly, the Court hereby DENIES without prejudice Michelin's Motion to Apply the Laws of Mexico to Plaintiffs' claims (DE 22).

Having thus followed the Texas choice of law issue to its logical conclusion, the Court now returns to the forum non conveniens analysis for final resolution. To recap, of the private interest

---

[5] The Court makes this conclusion based upon Texas conflict of laws despite the fact that the court in the Northern District of Illinois to which this case is transferred may ultimately reach a different conclusion. Indeed, the Court's cursory examination of Illinois choice of law decisions indicates that while Illinois, like Texas, has adopted the Restatement Second's "most significant relationship" test, there is somewhat of a greater emphasis on the place of injury factor in Illinois, particularly where United States citizens travel to foreign resorts for vacation (which is not the case before this Court), as that factor promotes uniformity of result and certainty regarding the applicable law in future tort suits. *Compare Duncan*, 665 S.W.2d at 420 ("the [*lex locus delicti*] rule's ease of application and uniformity of result d[o] not justify its arbitrary and often inequitable results") *with Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842 (7th Cir. 1999) (Posner, J.) (applying Mexican law to suit between Illinois plaintiff and American corporation arising out of accident occurring in Mexican resort and stating that "in the absence of a choice of law clause in the contract between the injurer and the victim, *lex loci delicti* is the only choice of law that won't impose potentially debilitating legal uncertainties on businesses that cater to a multinational clientele while selecting the rule of decision most likely to optimize safety"); *and Townsend*, 879 N.E.2d at 902 (observing that the Restatement Second's presumptive rules - *i.e.*, the § 146 presumption in favor of the place of injury in personal injury suits - had been undervalued causing uncertainty and higher costs of litigation); *but see Esser v. McIntyre*, 661 N.E.2d 1138, 1141-43 (Ill. 1996) (applying Illinois law to suit between Illinois plaintiff and Illinois defendant arising out of slip-and-fall accident occurring at Mexican hotel and stating that "although both Mexico and Illinois had contacts with the action, Illinois had the most significant relationship, especially considering Illinois' interest in providing tort remedies to its injured citizens").

factors, none weigh strongly in favor of dismissal to Mexico. Of the public interest factors, neither court congestion, the interest in having localized controversies decided at home, nor the unfairness of burdening citizens in an unrelated forum with jury duty weigh in favor of dismissal to Mexico, even though those factors do not weigh in favor of a Texas forum either. The remaining public interest factors require the Court to consider the interest in having a forum that is at home with the law that must govern the dispute, and the avoidance of unnecessary choice of law problems. The Court then utilized the Texas approach to conflicts of law, and found that Illinois has a "significant relationship" to this litigation, or at least one that exceeds Texas's. Mexico also has a relationship that exceeds Texas's. An Illinois court would certainly be better versed in Illinois law than this Court, while the application of Mexican law would be foreign to both this Court and most Illinois courts. Further, there is a chance that a court in Illinois would be applying its own law, while there is no chance that this Court would be applying the law of Texas. Accordingly, this Court concludes that having a forum that has a chance to be at home with the law governing the dispute, potentially weighs against dismissal of this case to Mexico, but more importantly weighs against this Court retaining this case. For that and other foregoing reasons, the Court hereby DENIES Defendants' Motion to Dismiss Under the Doctrine of Forum Non Conveniens (DE 20).

## IV.  CONCLUSION

The fact that the accident giving rise to this suit occurred in Mexico is a factor for the Court to consider in the forum non conveniens analysis. Nevertheless, it does not require the Court to dismiss the suit based on forum non conveniens grounds, especially where all but one of the Plaintiffs is a United States citizen, all of the Plaintiffs are permanent residents of Illinois, and have been at all times relevant to this litigation, Michelin is United States corporation, the Toyota truck

was purchased in Illinois, the subject tire was manufactured in the United States, and according to Plaintiffs' complaint, sold to Plaintiffs along with the truck in Illinois. The private interest factors regarding sources of proof and witnesses are each split between the United States and Mexico, and the other two factors, view of the premises and practical problems, did not weigh in favor of dismissal. The current "split" does not equate to Mexico being a "substantially more convenient" forum. *In re Volkswagen*, 545 F.3d at 314. The public interest factors revealed that while Mexico has an interest in this litigation, it is a somewhat limited one, despite the accident having occurred there. Texas has none. *See id.* at 318 (observing that the availability of an allegedly defective product in a particular judicial division does not give a court sitting there "a stake [ ] in the resolution of [the] controversy").

This Court, therefore, finds that the convenience of the parties and witnesses, in the interests of justice, require transferring this case to the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1404(a).[6] That venue is "clearly more convenient" than the venue chosen by the Plaintiffs. *In re Volkswagen*, 545 F.3d at 315. In reaching this conclusion, the Court emphasizes that it is also denying the motion to apply Mexican law, but is doing so without prejudice. While

---

[6] The Fifth Circuit has held that the private and public interest factors a district court applies in a forum non conveniens case are also appropriate for the determination of whether a § 1404(a) venue transfer is for the convenience of parties and witnesses and in the interest of justice. *See In re Volkswagen*, 545 F.3d at 315 (citing *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963)). The foregoing forum non conveniens analysis supports a finding that Illinois would be a more convenient forum for this litigation. Since the burden a moving party must meet to justify a venue transfer is less demanding than that a moving party must meet to warrant a forum non conveniens dismissal, *In re Volkswagen*, 545 F.3d at 314, *a fortiori*, the private and public interest factors in this case also support a finding that a venue transfer to Illinois is "[f]or the convenience of the parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a).

Additionally, the Court notes that while Brownsville, Texas may be more convenient for the witnesses in Mexico to reach, this Court has no more power to compel an uncooperative witness to appear than any other federal court, including those in Illinois. Thus, while the cost of travel to Illinois for the Mexican witnesses may be greater, it will at least be balanced by the fact that the Plaintiffs will be in their home forum and travel by the Defendants to Illinois will be comparable to travel to Texas.

an argument can certainly be put forth in favor of Illinois law, the choice of law analysis which the transferee court will engage in, may very well result in the granting of the Defendants' motion should it be reurged.  Indeed, there is truly no bar for the transferee court to reconsider the dismissal of this matter to Mexico under the forum non conveniens factors as interpreted in the Seventh Circuit.  An order transferring this action to the Northern District of Illinois, Eastern Division, will be entered separately.

SIGNED this 16th day of March, 2009.

Andrew S. Hanen
United States District Judge